Good morning, Illinois Appellate Court, 1st District Court is now in session, the 4th Division, the Honorable Justice Robert E. Gordon presiding, case number 1-9-1-3-2-0, People v. Everett Silas. Silas. Okay, would the lawyers who are going to argue the case please introduce yourself before the court. Good morning, my name is Nicolette Kewins from the law firm of Taft, Titanius & Hollister. I'm appearing this morning as pro bono counsel for the defendant appellant, Mr. Everett Silas, through my participation in the Supreme Court pro bono program. Good morning, Your Honors, Paul Wosicki, Assistant State's Attorney on behalf of the people of the state of Illinois. Okay, the appellant, are you going to reserve some time for rebuttal here? Yes, I'd like to reserve at least three minutes for my rebuttal. All right, that'd be fine. Now let's proceed ahead. Good morning, Mr. Presiding Justice, and may it please the court. This appeal involves the trial court's erroneous admission of other crimes evidence that pertains to armed robberies allegedly committed by Mr. Everett Silas. The other crimes evidence that was presented at trial unfairly prejudiced Mr. Silas. So much so, in fact, that Mr. Silas was found guilty of armed robbery with a firearm as to Mr. Jonathan Pena Romero as a direct result of the state's reliance upon that improper evidence. And this happened even though that same jury acquitted him as to the state's other charge against him, which is for aggravated kidnapping. Mr. Silas is currently serving a 28-year sentence as a result of his armed robbery conviction. Your Honors, matters that concern the admission of other crimes evidence routinely come before this court. And those appeals often involve close calls, whether it's in terms of the degree of similarity between the other crimes evidence on the one hand and the charge defense on the other. Or whether it's as to the admission of the other crimes evidence, even if it was ultimately an error, if it truly tips the scales against the defendant at trial. This matter that involves Mr. Silas is not one of those cases, though, because there are no close calls here. The other alleged crimes were obviously too different from the charge defense. The wrongfully admitted other crimes evidence was far from harmless. The state's efforts to gloss over facts to convince this court otherwise, that ordinary events of any armed robbery can give rise to similarities that are sufficient to warrant the admission of other crimes evidence here, they're just unpersuasive. And that's because the difference between the armed robbery of Mr. Pena-Romero on the one hand, and the alleged armed robberies of Mr. Carlos Barriga and Mr. Arturo Ramirez on the other are numerous, and they're very significant. They destroy any similarities between all of the alleged armed robberies. Because the armed robbery of Mr. Pena-Romero is so plainly dissimilar from the armed robberies of Mr. Barriga and Mr. Ramirez, I'd like to focus the court's attention this morning upon the highly prejudicial impact of the other crimes evidence, which deprived Mr. Silas of a fair trial and cannot be dismissed as harmless error. Counsel, before you proceed to the effect, you answer one question with regards to the other cases, I believe there was four cases that the state wanted to have presented to, to the jury, the judge, and balancing decided to allow two out of the four. Right. So, isn't wasn't that a reasonable means by which the judge was trying to limit the prejudicial effect of the evidence that was going to the jury. Respectfully, Your Honor, no, it was not. And that's for a couple of reasons. If you look to those other four crimes that were initially presented to the court prior to trial. Each of those other four crimes may have been similar unto themselves, but that's not the inquiry before the court, the inquiry before the trial court is properly whether or not the other crimes evidence is sufficiently similar to the charge defense. And here, if we look at the other crimes evidence all four of those particular armed robberies, and the two that were ultimately admitted against Mr Silas at trial versus the charge defense, they're just too dissimilar to warrant their to warrant their admission. And that's for several reasons. Most obviously, the charge defense pertaining to Mr Pino Romero that involves an aggravated kidnapping charge. That's not apparent from the facts that were presented as to the other alleged crimes. And those other alleged crimes. They also involved a completely different tactic to initiate the armed robbery, specifically in all four of those other crimes, and in the two most relevantly that were actually admitted against Mr Silas at trial. Those involves the offender soliciting the particular victims over grinder, which is a networking and dating application for the LGBTQ community. And through those communications, he invited the victims to a multi unit apartment building, those victims arrived at that location of their own volition. And in so doing, we're ultimately and allegedly robbed. So those similarities are just too tenuous and really non existent, the state would have you believe otherwise the state contends instead that the other crimes evidence is similar to the charge defense, but only relies on the prototypical elements of any armed robbery and making that assumption. But don't we have a situation here where the other four cases were not charged so we don't know. Ultimately, had they gone to trial what the charges would have been as opposed to this case where they actually is a charge. So, is that something that we should take into consideration. Well, Your Honor, you're exactly right that for the other alleged crimes. Mr Silas was charged but not yet convicted and that also frustrates the state's argument that the other alleged crimes should be used for a non propensity purpose at trial that is for identity identity wasn't established as to those other crimes, because Mr Silas was not convicted as to them, so that further diminishes their value for non propensity purposes at trial. Your Honor, if I may return to the undue prejudice that was ultimately and undoubtedly suffered as a result of the admission of the other crimes evidence. It's very clear. Thank you. It's very clear that the court failed to meaningfully consider the obvious prejudicial impact of the other crimes evidence. Evidence of other crimes is generally not admissible admissible, but it can be for non propensity purposes, if it's probative value outweighs the risk of unfair prejudice. Critically trial judges are to engage in a meaningful assessment of the probative value versus the prejudice prejudicial impact of that particular evidence, and that's what our Supreme Court has instructed here the trial court did not meaningfully consider the prejudicial impact of that evidence. If it did meaningfully consider the prejudicial impact, it would have concluded that the probative value of the, and the cumulative impact of the other crimes was very minimal, and that the unfair prejudice was not a risk here but it was indeed a certainty. When the trial court acknowledged its obligation to conduct a balancing test prior to trial. It didn't actually weigh the relevant factors beyond just stating that the temporal and the geographic proximity of the alleged crime supported their admission. As to all the other alleged armed robberies, but noting that allowing all four of those into evidence would tend into the prejudice area. But temporal and geographic proximity alone are just not enough to warrant the admission of other crimes evidence at trial. And that's exactly what the Illinois Supreme Court held in people versus Lindgren. And if you remove then the geographic proximity and the temporal proximity of the charge defense versus the other alleged crime. The state is left relying upon similarities that are merely the prototypical elements of any armed robbery, the fact that a gun was involved, the fact that a gun was pointed at a victim in order to take the victims valuables. These are hardly distinctive links that warrants the admission of the other crimes at trial. And because of that, Mr Silas was undoubtedly prejudiced. What about the issue. I mean, here we have, regardless of Mr Romero got to the location we have location where a variety of robberies within a short amount of time are taking place. So doesn't that go to the issue of establishing a modus operandi here. Respectfully, Your Honor, it does not. And specifically as to modus operandi, although that is a legitimate purpose for which for which other crimes evidence may be admitted at trial, it's an exception to the general premise that other crimes evidence is inadmissible. So while that could be a recognized exception, the bar for admitting other crimes evidence for the purposes of modus operandi is the highest still. So that's an that requires distinctive links real fingerprints or indicators of an identity that can be gleaned from the pattern of the crime, if we're looking at the charge defense versus the other crimes evidence and we just don't have those distinctive links here. And again, what the state would contend is that those generic similarities of any general armed robbery that involves a modern handgun being pointed at a particular victim that does not rise to the high threshold required in order to justify the admission of other crimes evidence specifically for the purpose of modus operandi. Let me ask you this. All three of the victims were were robbed really at 2108 South Trumbull Avenue. Well, Your Honor, it's true that each of these armed robberies occurred in the proximity of that particular address, but it's important to note that the precise location of each of the armed robberies defers. And so if we look to Mr. Pena Romero's case in the charge defense, there Mr. Pena Romero repeatedly contended that he was robbed outside of that multi-unit apartment building located at that address. And that's different than the cases of Mr. Bariga and Mr. Ramirez were in each of those instances the victims testify that they were robbed inside of the interior lobby of the multi-unit apartment building located at that address. And I'll note too for the court that Mr. Pena Romero's testimony that he was robbed outside of the particular building located at that address, which is undisputed. He repeats that at multiple times during that trial was directly contradicted by the police officer who investigated that case the exact same day. Officer Martinez in this case testified that the same day that Mr. Pena Romero was supposedly robbed by Mr. Silas. He took him to that site, showed him the exact location where the robbery occurred, and that was inside of the building. And that directly contradicted Mr. Pena Romero's testimony at trial. And that supports the Mr. Silas's contention here today, which is that if we remove the other crimes evidence from the equation, if that's taken away from the case, the evidence that remains that the state relied upon at trial is simply too tenuous in order to support an armed robbery conviction. And you don't have to take my word for it, Your Honors. You can look into what the jury thought and how they responded to the state's case in chief. Because they were unable to convict Mr. Silas as to aggravated kidnapping. And that's because the only evidence the state had as to the aggravated kidnapping charge came directly from the mouth of Mr. Pena Romero. And absent any other evidence, and given the jury's obvious doubts as to Mr. Pena Romero's testimony, which is evident from the questions that they posed to the court during deliberations, it's clear that Mr. Pena Romero was not a credible witness. And so they needed more in order to find Mr. Silas guilty of armed robbery. And they had more because they had the improper and highly prejudicial evidence as to the testimonies of Mr. Ramirez and as to Mr. Bariga. And those two testimonies combined undoubtedly painted a picture that Mr. Silas is a bad person with the propensity to rob Hispanic men at gunpoint. And that was improper. Where exactly did you find this issue with regards to the jury not believing Mr. Romero and then doubting his credibility? Where in the record can you point to us that says, okay, well, this is where the jury's determination was based on his credibility? That's a reasonable inference that this court can draw based on the fact that during the jury's deliberations, it posed not one but two questions to the court. Those questions were first inquiring as to whether or not the state had any evidence to support the fact that Mr. Pena Romero was supposedly visiting the Chase Bank in order to withdraw cash to remit payment for his insurance. And the state did not produce any sort of bank transcripts or statements to support that fact. So the jury asked about that because obviously Mr. Pena Romero's word wasn't enough for them as to that particular point. And then second, they inquired as to whether or not they should consider the fact that a gun was not recovered with respect to the charge defense. And that there was no fingerprint or DNA evidence that was recovered from the vehicle in which both Mr. Pena Romero and Mr. Silas supposedly arrived at the ultimate site of the robbery after Mr. Silas supposedly kidnapped Mr. Pena Romero. And as Officer Martinez noted on the stand, undoubtedly Mr. Pena Romero's vehicle would have been a crime scene by virtue of that aggravated kidnapping. And yet there was no evidence at all beyond Mr. Pena Romero's testimony with respect to both of the charges. So if we assume that Mr. Romero's testimony, does that mean that we should reject all of it? Or should we rely on the jury or trust the jury to determine whether a witness is truthful or not? I apologize, Your Honor. I believe I missed the beginning part of your question, if you wouldn't mind repeating it. Assuming that the jury doubted Mr. Romero's testimony, should we then disregard all of it? Or should we trust the jury in the sense that they listen to a witness and they're able to make a determination what's true for or not? Here, Your Honor, it would be proper and what Mr. Silas ultimately seeks is a new trial. And he seeks a new trial where a new jury will be able to consider the issues presented and the charges against him without the muddling and clouding and highly prejudicial effect of the other alleged crimes. Because those other alleged crimes were improperly admitted at trial against Mr. Silas, it's just impossible to say whether or not the jury would have... Rather, because those other alleged crimes were admitted at trial against him, he was undoubtedly deprived of a fair trial. So here, it is important that Mr. Silas, and that's what he seeks, is a new trial that does not include the clouding of these particular other alleged crimes because they were prejudicial. Is there any further questions? Okay, yes. Counsel, I know that you're inferring from the jury finding the defendant not guilty of aggravated kidnapping that they did not believe him. But I'm thinking, my recollection of the evidence is that the defendant's lawyer did a very good job in attacking the kidnapping based upon what the state didn't present, that there was no corroboration, that there was no fingerprinting of the car or search of the car for any kind of DNA by the police. And I forgot what the third thing was, but that the lawyer raised a reasonable doubt as to that. So, I mean, we could infer or speculate just the opposite of what you are speculating. To me, it kind of wipes that out. But in terms of the armed robbery, when you say it's not modus operandi, it's because it's not similar enough, that there are too many dissimilarities. To me, what's striking, and I just want you to address it for me, if I were an armed robber, I certainly would not take somebody to my house to rob me. Yet, he took the person, not into the lobby, I grant you that, but at the door of the building. And then there are two other people who testify, I was invited to this building and I was robbed in a building. To me, that's kind of a unique kind of thing for an armed robber to do, that would go to his modus operandi. He brings some people, his victims, to where he lived. Maybe he thought it was a safe place. Maybe it's a terrible neighborhood and everybody around there robs people. I don't know, but it just seemed so unique to me that it would be someone's handiwork that they bring someone to their residence, whether it's right outside the entrance or inside the entrance. And the other thing that they were all three young, I'm assuming from what I've read, Hispanic males that he brought to that location. I mean, there are other similarities besides the location. One is like, I think maybe 14 or 15 hours before that at the same location. And the other one is four days later at the same location and almost at the same time of the afternoon. And a black gun is used. I think two or maybe all three had the gun put in their back first. I'm not sure. And everybody had their phone taken. How much do you think we have to have or one has to have a judge when he's determining what to allow in his modus operandi and identity before we say that it's enough? I mean, there are going to be differences. But to me, I really would, I guess, want you to try to rob them and all of them within a six-day period. Certainly, Your Honor. And to address your first remarks, you noted here that perhaps counsel for the defense at trial did a good job at distinguishing the fact that as to the aggravated kidnapping charge, there just wasn't evidence there to support it. And we certainly agree with that. But in the same way that evidence was lacking as to the aggravated kidnapping charge, so too was it lacking as to the armed robbery charge. There just wasn't any other evidence or testimony to corroborate Mr. Pino Romero's version of events. And it's important, too, to note that both prongs of the charges against Mr. Silas, that is, as to the aggravated kidnapping and then as to the armed robbery. In both of those instances, we're asked to believe, at least as the state contends, that these occurred during the middle of the afternoon in broad daylight at a busy intersection at 26th and Springfield in the case of the aggravated kidnapping. And then ultimately resulting in an armed robbery that occurred not inside of a lobby and perhaps hidden from the view of witness, but outside on the sidewalk in front of a multi-unit apartment building, in Mr. Pino Romero's own words, in the view of plenty of people who apparently were just there and observed this and weren't called as witnesses by the state in order to corroborate Mr. Pino Romero's versions of events. And that's critical. This lack of evidence points to the weaknesses in the state's case where, but for the inclusion of the other crimes evidence, the state could not have prevailed as to the armed robbery conviction. And as to Your Honor's second question, how much more do we need? What do we need here in order to say that the similarities would be sufficient to warrant an armed robbery conviction, especially when we're considering the admission of the other crimes evidence here for the purpose of modus operandi? And the answer to your question, Your Honor, is that the time and the place proximity alone, which Your Honor pointed out in your remarks, is simply not enough to reach that higher bar that's required for similarities for modus operandi purposes. So we're looking just at the time proximity. Your Honor noted that perhaps, yes, all of these alleged events occurred within the same month, within a span of several days, but that's timing and timing alone is not enough. And then the geography, the fact that these events all occurred around the same particular address, that also is not enough alone to sustain the proper admission of these other crimes evidence against Mr. Silas at trial. So if we remove those two elements, because they just aren't enough alone. That's true, Your Honor, but that also points to the fact that here, and as to identities specifically, these other crimes were not necessary. Indeed, they were cumulative in order to establish that Mr. Silas resided at the address in a multi-unit apartment building. That fact was not in the dispute. The party stipulated as much on the record during the course of trial. So there was no need for the other crimes evidence to come in to establish that Mr. Silas resided at this particular address. But again, the fact that all of these armed robberies occurred within the proximity of that particular address alone cannot carry the day for the rightful admission of those particular other crimes against Mr. Silas at trial. And case law might be instructive to that point, Your Honor. For instance, in the matter of People v. Howard, that was an armed robbery case where the victim in the charged offense was a white male professor at the University of Illinois at Chicago. He was robbed at gunpoint on Van Buren near the UIC campus. He was approached from behind by the offender who pointed a gun at him, demanded his wallet, and used a particular expletive in so doing. And after he did that, he fled. And at trial, other crimes evidence was admitted for the purpose of modus operandi and for identity. And in that other crimes evidence, another white male UIC professor was also robbed at gunpoint. That occurred just two days earlier, where the offender again approached the victim from behind, demanded a wallet at gunpoint, and used the same expletive in doing so before he fled. And the court in that case said the similarities between the two crimes are just too generic and not distinctive enough in order to warrant the submission. And it's Mr. Silas's position here that the facts of People v. Howard are far more distinctive and would give rise to those distinctive links, at least one would think. But in applying the court's logic there to this particular case, it's clear we just do not have those distinctive similarities. We do not have an earmark, a fingerprint of a particular method of committing crime. Excuse me, but didn't all three victims here identify the defendant as the individual with the weapon, and that it was a similar type of weapon also? And in terms of the actions, he forcefully used the weapon to relieve them of their property, and he didn't harm them. That's a distinctive fact in itself. Your Honor, it's certainly true that the state contends that those facts that you've recited are distinctive for their purposes, but Mr. Silas respectfully disagrees. As to the handgun, for instance, all three of the alleged armed robbery victims, Your Honor, only testified as to the generic descriptions of any ordinary handgun. They testified, generally speaking, that the gun was small, it had a handle, and it was black or charcoal black. And that alone is certainly not enough to give rise to a distinctive point of evidence to say that the gun that was used in all three of these alleged robberies was one and the same. And we can look to other, for instance, and in other matters that have come before the court that specifically consider the admission or the rather identity via a particular weapon that might have been used in all of the armed robberies, perhaps if it was a long silver handgun, that would be a different case, but that's not what we have here. And moreover, it was only one of the other crimes victims that testified that the gun was a semi-automatic. That wasn't even consistent across all three of the victims. That really points to another difference between all three of the armed robberies. Again, it's a prototypical element of any armed robbery that a weapon will be used. And so here a weapon was used, but that again is not enough to give rise to the level of the similarities that are necessary in order to properly permit the admission of other crimes evidence against Mr. Silas. Let me ask you one question. You bring out the point that this aggravating kidnapping acquittal is some type of inference or factor that we should consider in our decision making process. Do you have a case that supports that? Your Honor, not for the direct premise, but I do believe it's a reasonable common sense inference from these facts, given that the state's case was so thin, given that the evidence as to both charges primarily was propped up against Mr. Pedro Romero, who is not a credible witness, with the exception of as to the armed robbery charges, because the armed robbery charges were propped up on improper other crimes evidence as to the prejudicial test. Your Honor, my question is, you don't have a case that says that. Because, you know, in my experiences over 60 years as a lawyer, I've seen juries become very confused as to the aggravating kidnapping instruction. And therefore, it's an instruction that lawyers may understand better than jurors do. And they can acquit somebody based on that fact, not on other factors. So that's why I don't think the courts can consider that as any type of inference. You may call it reasonable, but as you get more experience, you'll see that that may not be so reasonable as you think. But I thank you anyway. Is there any further questions? No. Thank you very much, Your Honors. Okay, let's hear from the state. Thank you, Your Honor. May it please the court, counsel. As all three of you have pointed out, at certain points during the argument, there are in fact a host of similarities between the other crimes evidence, the Ramirez and Brega robberies, and the central robbery here of Mr. Pena. And to suggest that we should throw out some of those similarities because alone those similarities don't amount to modus operandi kind of misses the point of the analysis. We look at the totality of the conduct, not each distinct feature of it. There doesn't have to be one signature element to the conduct to support admission of other crimes evidence on modus operandi. And here the similarities that go to modus operandi are particularly strong, being that defendant was so brazen as to commit these three robberies at his home. Counsel talks about a multi-unit building. It's a two flat. He was robbing people at the two flat he lives in with his family. He did it within this was a six day period that separated all three of these robberies. The fact that he did have that all three witnesses described a black gun versus a silver gun or a blue gun or some other type of gun is in fact another similarity. It doesn't distinct. It's not true that a gun is a gun is a gun. This gun is the gun was similarly described by all of the witnesses. Oh, also indicative right it is as has been pointed out, all of the all of the victims were allowed to leave unharmed he patted down search of victims removed their belongings from them. I mean this was, you know, there are some generic elements right taking someone's property by forces by definition robbery, that has to happen in every robbery for it to be a robbery. Here we go beyond that though with time and location. Another thing is, remember this evidence was not just admitted for modus operandi, it also came in for identity and intent. And identity, all three witnesses indicated identified the defendant and they all testify that they had a very good look at him in close proximity to them they were face to face with him, as he pointed a gun at them and relieve them of their property on the issue of Mr pain is credibility, it is the jury's job right to sift through the evidence and determine the truth here. General Burke we don't know precisely why the jury concluded the way it did on the aggravating kidnapping charge but we know that the evidence was sufficient to support the jury's verdict on the armed robbery charges no argument to the contrary. The argument is that the, you know, there was the other crimes evidence was admitted erroneously but there's no underlying argument that the evidence was in fact insufficient, and when you think about it, it was again more than ample. Mr Pena testified, walk the jury through a very detailed description of what happened, involving him and the defendant when the defendant robbed him at gunpoint in front of the defendants apartment building and 21 away, South Trumbull so the location does matter the time matter. And the key is when you look at the all of the facts that were introduced in the evidence. When you look at them together. There is sufficient similarity to warrant admission of the other crimes evidence. If we find to if we find to the contrary. Would that be a possibly harmless there. Absolutely, absolutely because Mr Pena his testimony alone negates any reasonable probability that the result would have been different without this evidence. This is not a situation where Mr Pena did not get a good look at his assailant express any uncertainty about who it was that robbed him expressed on any uncertainty about whether he's able to get a good look at defendant or not when he committed the robbery. This is the situation that Mr Pena testified, they were face to face when defendant handed them down and move his property from his pocket remember defendant was they were close enough to actually reached around and remove his phone from his left rear pocket of his trousers so this was not a situation where there was any doubt from Mr Pena as to who in fact relieved him of his property, while pointing a gun at. So, let me ask you this question Council as which I asked the appellant at the outset. So the court had this state wanted to submit for cases but the court then made a determination that only two of the four would go to, to the jury. So, um, I mean was that just a court arbitrarily saying I'm gonna I'm gonna let these two go or there was actual some type of consideration regards to the prejudice and appropriate value of the two cases that went as opposed to the other two. Well it was anything but arbitrary your honor, because as we know from the record proceeding that that comment about anything more than two would venture into the world of prejudice. The court standard under 403 we have to weigh the probative value against the project potential for unfair prejudice in this case so the court was clearly aware of the standard, and then apply the standard in limiting the state to only two of the four other crimes. That that he had presented. And so the court did in fact do the required analysis make the required assessment of prejudice versus the risk of unfair prejudice. And remember, to be admissible there was some discussion about what is required to permit the admissibility what must be shown to establish the other crime, and it's merely a reasonable suspicions, you don't have to prove the other crime beyond a reasonable doubt so the fact that defendant may not have been convicted of the other crimes before this trial is a before he was convicted in the painting trial or before the evidence was admitted in the painting trial is of no moment. The issue is whether the evidence of Braga and Regan Ramirez was sufficient to create a reasonable suspicion that defendant engaged in the other criminal conduct engaged in the committed the robberies that they indicated. And the fact that the other charges were, or should I said the other offenses were on charges opposed to this one being charged I mean does that go into our analysis at all. With regards to similarity and lack of similarity with these offenses. Well I think what the record shows is that the other offenses were charged. This was just the one that was selected to go to trial. It's not that the other offenses weren't there, they were indeed charged, but they had five cases that they had charged and this is the one they selected to go to trial. So, so, and I don't think the status, as I read the case law, whether or not the other crime has been charged or not charged is really not an issue to be considered in another crimes analysis under 404 B. The issue is, does the evidence prove, give rise to a reasonable suspicion that the defendant committed the other crime and if so, are there sufficient, is there sufficient similarity between the other crimes and the crime that is on trial. And as we've demonstrated I think that here, what really makes this case unique is again the how brazen this defendant was to lure or drag and or take these men to his very own home and commit this robbery. So the fact that he would do this in broad daylight on the street. I mean, you have to be more brazen to do it I think on your own front stoop or your own lobby of your own home, your own apartment building. So that's what this shows and I think that's pretty powerful evidence in terms of are pretty powerful in terms of demonstrating this the similarity between the three crimes making the, the, this meaning that the trial court did not abuse its discretion. And I think the other thing to to recall is we spent a, we really focused on modus operandi throughout the argument here, but it was also admitted on identity and intent, and all three again all three individuals had a clear up close and personal experience with this this was not, you know, so there was nothing. None of them were uncertain or wavering in their identity of the defendant. So I think the at the end of the day, when we're looking at this was this in a brute abuse of discretion under the case log absolutely was not and I think it's important that we let me take a moment just to address the Howard case right. So, the only similarity in the Howard case, the only thing that wasn't generic really was the identity so it's it's it's really my, you know, it's kind of, it's interesting how the court ended up not finding the case that evidence admissible at least an identity, but it looks like the argument there to focus focused on modus operandi because really what getting getting robbed in the general area of UIC campus, that's a pretty broad area. The fact that two professors happen to be robbed that that's not all that surprising places, presumably crawling with professors being a university, so there's nothing really unique there in the state, and in that case was not able to bring forth evidence that indicated that the defendant had a particular plan to go after white male college professors. So it was just coincidence and happenstance there's nothing terribly unique about it. But, interestingly, both witnesses did clearly identify the defendant. So it is interesting it's curious that the court came out the way it did. But really when you look at Miller and the other cases that that we cite it, they show that it where, where you do have multiple witnesses, other crimes witnesses that identify the defendant that that is proper as properly admitted then as other crimes evidence on the issue of identity. It's only the issue of propensity where the evidence doesn't come in and it's only with mo that you need this, this heightened level of similarity so even if you find that we don't have that heightened level of similarity but I think we do for all the reasons we talked about. But even if you were to find that there's not that height level of similarity. The evidence was still properly admitted on the issues of intent and identity. So no relief would be warranted for the defender. So for all the reasons we've articulated and then here today if there's no further questions. Thank you. Any further questions by Justice Lampkin, anything. No, thank you. And my internet keeps saying it stay unstable so if I don't know how to answer it's because my internet is asking me now. I have no further questions. Okay, then let's hear the rebuttal. Thank you. Just a few points. Let me ask you a question right off the bat. Let's assume that I agree with you as to the other crime evidence. How is that reversible error and not harmless error when there's a identification made by the victim. Here Your Honor, it is not harmless error. And this goes against of course my opponent's contentions during his argument and in his brief, and we know it's not harmless error here, given the weaknesses in the state's case, and they were many. For instance, the state didn't call any witnesses to the alleged kidnapping or to the alleged robbery or robbery with respect to the charge defense, even though they both occurred in broad daylight on busy streets. The state didn't introduce any video footage that was that should have been available from for video cameras that were in the vicinity of the Chase Bank where the kidnapping occurred. The state didn't introduce any evidence that Mr. Pino Romero actually withdrew money from the bank and that was a problem that the jury noted in its questions to the court during its deliberations, the state didn't say he had no money. Then he testified he had no money. No, Your Honor, he did not. Mr. Pino Romero testified that he withdrew cash from the Chase Bank in order to submit a payment for his insurance, which in and of itself is a bit curious. But nonetheless, he did testify that he withdrew money from the bank and that it was in his wallet that during the time of the kidnapping, while supposedly Mr. Silas and Mr. Pino Romero were together in the car, that the wallet was out and on the seat of the car such that Mr. Silas, if he was ultimately seeking to deprive Mr. Pino Romero of his valuables as is typical to any armed robbery, presumably he would have just taken it then. And even then, too, supposedly at the site of the armed robbery in front of the multi-unit apartment building, when Mr. Pino Romero indicated to Mr. Silas that his wallet with the money was in the car, nothing further happened there. Nothing, there was no attempt that's evident from the record of Mr. Pino, of Mr. Silas rather seeking to actually deprive Mr. Pino Romero of that money. And the other, there are other notable deficiencies in the state's case in chief, Your Honor, and I would like to draw everyone's attention to those as well. Specifically, the state did not identify Mr. Silas's alleged accomplice that drove the red lead car to the multi-unit apartment building. And this is something that is sort of glossed over here, but it's important to note that if we take the state's version of events as true, as it was told through the mouthpiece of Mr. Pino Romero, necessarily there was an accomplice that was involved in the charged offense. Who was driving that red lead car? That red lead car was in front of the Chase Bank and somehow Mr. Silas was able to communicate with Mr. Pino Romero, who testified repeatedly that he did not speak English, who testified at trial through a Spanish-English interpreter. Somehow he was able to understand Mr. Silas's commands to follow that red lead car, which led to the multi-unit apartment building. And we don't know who was involved with respect to that portion of the crime, who here was involved. Additionally, the state didn't present any physical evidence of any kind, including the gun, and that's another problem that the jury noted during its deliberations. It asked the court, what are we to make of the fact that no gun was recovered in this case? And that doesn't just go to the armed aggravated kidnapping charge against Mr. Silas, that also goes to the armed robbery charge against Mr. Silas. So it's crucial to note that the lack of physical evidence here was on the jury's mind, and that's at play in terms of both of the charges, not just the aggravated kidnapping charge that the jury acquitted Mr. Silas of, but also to the armed robbery charge. Moreover, Your Honors, I'd like to address my opponent's contention that the totality of the conduct here supports the admission of the other crimes evidence, and that's just not true. Here, the dissimilarities defeat any generic similarities that the state has identified, and that's apparent in, again, comparing the charged events against the other crimes evidence that was actually admitted at trial. The nature of the crimes themselves differ. As to Mr. Pena-Romero, we were dealing with an aggravated kidnapping and an armed robbery. There's no mention of any kidnapping in the other alleged crimes. In fact, both of those gentlemen testified that they arrived at the location of the robberies of their own volition after accepting an invitation that was extended to them through an LBGTQ dating application. The dates of the crimes themselves are all different. The times of the crimes themselves are all different. As to Mr. Pena-Romero, that occurred in the afternoon hours. As to Mr. Barriga, that occurred during the late evening hours. Mr. Ramirez, his crime occurred in the early afternoon. The precise location of the crimes are all different. It's true that they all occurred in the general proximity of the multi-unit apartment building located at 2801 South Trumbull. However, again, the location alone here is simply not enough to warrant the admission of the other crimes evidence. And here, if we look at the precise location, it's different, and that's notable, and it should be of note to this court. Here, Mr. Pena-Romero was robbed outside of the building on the sidewalk, at least if his testimony is to be believed, because again, it was directly contradicted by the testimony of the investigating officer, Officer Martinez. And as to the other crimes victims, they were both robbed inside of the lobby, outside of the view of any other witnesses. The means by which the offender initiated the crime also differ among each of these armed robberies. As to Mr. Pena-Romero, the allegations against Mr. Silas was that he essentially stalked and ambushed him outside of a Chase bank, kidnapped him at gunpoint, and forced him to follow a red-lead car to the ultimate site of a robbery. And supposedly, both of those instances occurred in broad daylight in front of multiple witnesses. But in the case of both Mr. Barriga and Mr. Ramirez, here, Mr. Silas supposedly was communicating with those two individuals via grinder, and then invited them to arrive at his place of residence, and these individuals accepted the invitation and arrived at the location of their own volition. These are different crimes. The means by which the offender committed the crime are also very different, because as to Mr. Pena-Romero, we have the kidnapping, but also Mr. Pena-Romero was patted down at gunpoint. Not all three of the victims were patted down by gunpoint. Specifically, Mr. Barriga, he was not patted down, and obviously, too, he was not kidnapped. And Mr. Ramirez, he was patted down, but he was not kidnapped. That's another difference that destroys similarities between all three of these crimes. The items taken during the robberies are all also different. Inexplicably, Mr. Pena-Romero was not deprived of his wallet and cash, which just doesn't track in terms of what one would expect for any prototypical armed robbery, as these two other alleged crimes certainly evidence, because as to those two other alleged crimes, the individuals in both of those cases were deprived of all of their possessions of value, wallet, phone, and in the case of Mr. Ramirez, also his headphones. And then finally, the individuals that were involved in committing the crimes all defer. Again, the state glosses over the fact that there was most certainly an accomplice involved in the robbery of Mr. Pena-Romero. There was an individual, at least one, maybe there were more people in the car, we don't know, but at least one person was driving that red lead car and was an accomplice to both supposedly the aggravated kidnapping and the armed robbery. And that's not the case that we have as to the other crimes, where plainly it was only one individual that was involved in luring the individuals to that multi-unit apartment building in order to effectuate the robberies. Mr. Silas? Thank you. Okay, are you through with it anymore? Did I stop you too early? Your Honor, I was merely going to ask that Mr. Silas, or reiterate rather, that Mr. Silas respectfully request that the court vacate the jury's verdict, reverse the judgment entered against him as the armed robbery charge, and remand the case for the new trial. That's the fair outcome here, and Mr. Silas didn't get that opportunity at the first time. He should have had his guilt and innocence evaluated by a jury based on the charges against him alone and without overcoming this prejudicial hurdle of the other crimes evidence that was unfairly presented against him. Thank you. Okay, is there any questions by Justice Lamkin? I don't have a question. I do have a comment. And I know Judge Gordon is going to say this, but of course, both sides did a wonderful job, but I need to speak directly to this. How do you pronounce your last name? Is it Hewins? Hewins, yes, exactly. Wonderful, wonderful. I am. I know that you're with the civil law firm. But your brief is as one of the most thorough, clear, concise briefs I've had. I am so happy that you participated in this program. I love your bullet points. They are fabulous. I mean, I was just so impressed and I just wanted to say to you, please take another case. And I would like to add to that. This is probably one of the best pro bono arguments I've heard in all my years. Yes, so please, please. Tell your firm we love it. Tell your firm we are so happy. I know I spoke to a partner at your firm and maybe eight or 10 people volunteered from your firm. And so personally, I am forever grateful. But for you, I want to say bravo because you did a wonderful, wonderful job in writing and in articulating your position to us today. Any questions? No, I just want to also echo the comments made by Presiding Justice Gordon and Justice Lampkin. From the standpoint of, you know, contributing to the profession and contributing to the community at large. I want to commend you and your firm for participating in the program. And also personally, individually to you, I want to commend you on a job well done. State, job well done as well. Both arguments were very good. And you gave us a lot to think about regarding this case. So thank you both very much. And I'd like to add that Mr. Wojcicki, he always gives wonderful arguments. And he did a wonderful job in this case also. And we will shortly give you an opinion or an order on this case. And the court will be adjourned, but the justices will stay afterwards.